United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   SCOTTSDALE INSURANCE COMPANY,        No  C  05-0313  VRW

12            Plaintiff,                       ORDER

13          v

14   OU INTERESTS, INC, et al,

15            Defendants.

16   _____/

17

18

19          Before the court are the parties' cross motions for

20   summary judgment.  For reasons discussed herein, plaintiff

21   Scottsdale Insurance Company's ("Scottsdale") motion for summary

22   judgment in its favor as to defendant and counterclaimant Ou

23   Interests, Inc ("Ou") is DENIED; Ou's motion for partial summary

24   judgment on its counterclaim for breach of contract is GRANTED.

25   Partial summary judgment is further GRANTED in favor of Ou on its

26   counterclaim for breach of the implied covenant of good faith and

27   fair dealing.  Scottsdale's motion for summary judgment in its

28   favor as to defendant and counterclaimant SOCO Limited ("SOCO") is

GRANTED, and SOCO's motion for partial summary judgment on its
counterclaim for breach of contract is DENIED.


I

       All facts relevant to this proceeding are undisputed.
Now-defunct SOCO was a California limited partnership whose sole
general partner was Ou.  SOCO's business was real estate
development.  On August 12, 1991, Scottsdale issued a comprehensive
general liability insurance policy ("CGL policy") to SOCO, naming
both SOCO and Ou as insureds.  Doc #28 ("Joint Stip") at 5, ¶13.

       The CGL policy was effective from August 12, 1991, to
January 1, 1994, during which time all premiums were paid.  Id.
The CGL policy was governed pursuant to form L6395a, which provides
in relevant part:

       The company will pay on behalf of the insured all sums
       which the insured shall become legally obligated to pay
       as damages because of
              A. bodily injury or
              B. property damage
       to which this insurance applies, caused by an occurrence,
       and the company shall have the right and the duty to
       defend any suit against the insured seeking damages on
       account of bodily injury or property damage, even if the
       allegations in the suit are groundless, false, or
       fraudulent, and may make such investigation and
       settlement of any claim or suit as it deems expedient,
       but the company shall not be obligated to pay any claim
       or judgment or to defend any suit after the applicable
       limit of the company's liability has been exhausted by
       payment of judgments or settlements.

Id at 5-6 ¶14; Ex G.

       Like most insurance policies, the CGL policy enumerated
several exclusions from coverage.  Relevant to this proceeding is
the "owned property exclusion," whereby coverage does not extend to
damage "to property owned or occupied by or rented to the insured,

2

United States District Court

For the Northern District of California

or, except with respect to the use of elevators, to property held by the insured for sale or entrusted to the insured for storage or safekeeping." Id at 6, ¶14; Ex G.

During the policy period, SOCO built and developed two buildings consisting of seventy-two residential condominium units and three commercial units (the "Post International property") located in San Francisco, California. Joint Stip at 3, ¶¶2, 4. At all relevant times, deeds to the Post International property were in the name of SOCO and not Ou. Id at 5, ¶12; Ex C. SOCO sold the first unit of the Post International property on March 11, 1994, and all remaining units were transferred from SOCO's control on or before November 11, 1996. Id ¶11; Ex B.

In 2001, the homeowners association of the Post International property filed a complaint against SOCO, Ou and Group 1 (successor-in-interest to SOCO and Ou) in California state court asserting various causes of action arising from alleged construction deficiencies ("Post International litigation"). SOCO and Ou first tendered defense of the Post International litigation to Scottsdale in June 2001 after the original complaint was filed; Scottsdale denied coverage based on the owned property exclusion. On October 21, 2004, the homeowners association filed a second amended complaint. The alleged construction deficiencies include substandard drainage and concrete work, poor design and installation of plumbing and fire sprinkler systems, defects in the spa and flaws in the roofing construction. The Post International plaintiffs further allege that the construction defects have caused other physical damage to the property.

//

3

United States District Court

For the Northern District of California

On October 25, 2004, SOCO and Ou retendered defense and indemnity to Scottsdale.  On November 24, 2004, Scottsdale, through its agent, once again denied coverage to SOCO on the basis of the owned property exclusion.  Notwithstanding that Ou never held title to the Post International property, Scottsdale cited the owned property exclusion as grounds for denying coverage to Ou, positing that Ou had an ownership interest in the Post International property "entirely derivative of its status as general partner of [SOCO], such that the owned property exclusion is applicable to it as well."  Doc #37 (Willoughby Decl), Ex P at 11.

On January 21, 2005, Scottsdale filed this action against SOCO, Ou and Group 1 (collectively, "defendants") seeking a declaration that Scottsdale is not obligated to defend or indemnify SOCO or Ou in the Post International litigation.  Doc #1.  On March 11, 2005, SOCO and Ou filed counterclaims against Scottsdale for breach of contract and breach of the implied covenant of good faith and fair dealing.  Doc #12.  On May 16, 2005, Scottsdale agreed to defend Ou in the Post International litigation subject to a reservation of rights.  Joint Stip at 6, ¶17.

Before the court are the parties' motions for summary judgment.  Scottsdale moves for summary judgment in its favor on the applicability of the owned property exclusion and against counterclaimants SOCO and Ou on their counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing.  Doc #26.  Defendants cross-move for summary judgment in their favor on the applicability of the owned property exclusion.  Doc #32.  Counterclaimants SOCO and OU move for partial summary judgment on their counterclaim for breach of contract.  Id.

**II**

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v Liberty Lobby</u>, 477 US 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id.  And the burden of establishing the absence of a genuine issue of material fact lies with the moving party.  <u>Celotex Corp v Catrett</u>, 477 US 317, 322-23 (1986).  Summary judgment is granted only if the moving party is entitled to judgment as a matter of law.  FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, however, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting its claim that a genuine issue of material fact exists.  <u>TW Elec Serv v Pacific Elec Contractors Ass'n</u>, 809 F2d 626, 630 (9th Cir 1987).  The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Anderson</u>, 477 US at 255. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id at 249.

The evidence presented by both parties must be admissible.  FRCP 56(e).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine

United States District Court

For the Northern District of California

**5**

issues of fact and defeat summary judgment.  Thornhill Publishing Co, Inc v GTE Corp, 594 F2d 730, 738 (9th Cir 1979).  Hearsay statements in affidavits are inadmissible.  Japan Telecom, Inc v Japan Telecom America Inc, 287 F3d 866, 875 n1 (9th Cir 2004).

Finally, summary judgment is appropriate in this instance because interpretation of an insurance policy is generally a question of law.  See Tzung v State Farm Fire & Cas Co, 873 F2d 1338, 1340-41 (9th Cir 1989); AIU Ins Co v Superior Court, 51 Cal 3d 807, 818 (1990).

III

Because this is a diversity action involving interpretation of an insurance contract, California insurance law governs.  See Conestoga Servs v Executive Risk Indemnity, 312 F3d 976, 980-81 (9th Cir 2002).  "A federal court applying California law must apply the law as it believes the California Supreme Court would apply it."  Gravquick A/S v Trimble Navigation Int'l Ltd, 323 F3d 1219, 1222 (9th Cir 2003).  To the extent the California Supreme Court has not decided an issue presently before the court, the court must "predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids."  Id. Further, the court must defer to decisions of intermediate California appellate courts "unless there is convincing evidence that the California Supreme Court would decide the matter differently."  California Pro-Life Council, Inc v Getman, 323 F3d 1088, 1099 (9th Cir 2003) (citing In re Watts, 298 F3d 1077, 1082 (9th Cir 2002)).  Although the court is not bound by

United States District Court
For the Northern District of California

6

United States District Court

For the Northern District of California

unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority.  See, e g, <u>Employers Ins of Wausau v Granite State Ins Co</u>, 330 F3d 1214, 1220 n8 (9th Cir 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value.").

With these legal principles in mind, the court turns to the parties' arguments.


A

Scottsdale contends that the owned property exclusion precludes a finding of coverage as to both Ou and SOCO.  Although apparently conceding that SOCO owned the property, defendants contend that Ou never owned the property, rendering the owned property exclusion inapplicable to Ou.

In determining whether a partner owns partnership property for purposes of insurance coverage (when, as in this case, title to the property is not actually registered or recorded in the partner's name), California courts look to the relevant provisions of California Corporations Code.  See, e g, <u>Tinseltown Video, Inc v Transportation Ins Co</u>, 61 Cal App 4th 184 (1998).  Although SOCO is a limited partnership, Cal Corp Code § 15643(a) provides that the rights and liabilities of a partner in a limited partnership are determined according to the principles applicable to general partnerships.  The parties do not dispute that general partnership law applies to this case.  Accordingly, the law of general partnerships is relevant for present purposes.

//

7

United States District Court

For the Northern District of California

The California Uniform Partnership Act of 1994 ("1994 UPA") was enacted in 1996 and took effect on January 1, 1997.  Cal Corp Code § 16001, et seq.  The 1994 UPA superseded the California Uniform Partnership Act ("pre-1994 UPA"), codified at Cal Corp Code § 15001 et seq.  The pre-1994 UPA governed partnerships formed prior to January 1, 1997 and the 1994 UPA governs partnerships formed on or after that date.  Id § 16111(a).  Additionally, as of January 1, 1999, the 1994 UPA governs all partnerships regardless of when they were formed.  Id § 16111(b).  But the 1994 UPA "does not affect an action or proceeding commenced or right accrued before" January 1, 1997.  Id § 16112.  As noted, the Post International litigation commenced in 2001.  Further, Ou's right accrued when it first tendered defense to Scottsdale in 2001.  See Montrose Chemical Corp v Superior Court, 6 Cal 4th 287, 295 (1993) (stating that the duty to defend "is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage").  Accordingly, the action did not commence nor did the right accrue before January 1, 1997.  It would thus appear that the 1994 UPA, and not its predecessor, applies in this case.

The 1994 UPA unambiguously states that a "partner is not a coowner of partnership property and has no interest in partnership property that can be transferred, either voluntarily or involuntarily."  Cal Corp Code § 16501.  As the sole general partner of SOCO, Ou might have a substantial interest in the profits and losses of the partnership, but it is not considered an owner of any property held by SOCO.  Under the 1994 UPA, then, Ou never owned the Post International property.

United States District Court

For the Northern District of California

1    Scottsdale argues that the contract was formed in 1991
2    and the parties' mutual intent at that time should inform the
3    choice of applicable law.  According to Scottsdale, because the
4    pre-1994 UPA governed in 1991, Ou's status as owner of the property
5    should be evaluated under that body law.  Doc #39 at 6.  The court
6    is unpersuaded.

7    Scottsdale relies solely upon AIU Ins Co v Superior
8    Court, 51 Cal 3d 807 (1990), and Bank of the West v Superior Court,
9    2 Cal 4th 1254 (1992).  See Doc #39 at 6-7.  Those cases confirm
10   the uncontroversial proposition, codified at Cal Civ Code § 1636,
11   that "the mutual intention of the parties at the time the contract
12   is formed governs interpretation."  AIU, 51 Cal 3d at 821; see also
13   Bank of the West, 2 Cal 4th at 1264-65.  But Scottsdale points to
14   no direct authority for the proposition that the pre-1994 UPA
15   applies for purposes of construing an insurance policy that took
16   effect prior to the effective date of the 1994 UPA or January 1,
17   1999, when the pre-1994 UPA ceased to govern any partnership
18   (except as to actions commenced or rights accrued prior to January
19   1, 1997, see Cal Corp Code § 16112).

20   Ironically, AIU actually undercuts Scottsdale's position.
21   There, the California Supreme Court indicated that the parties'
22   mutual understanding at the time of contract formation does not
23   necessarily trump subsequent legislative developments that expand
24   coverage:

25           Although our focus is the expectations of the
26           insured at the time the policy is made, this
             emphasis does not preclude coverage of forms of
27           liability * * * created after the formation of the
             policy.  Because the policies in question here are
             "comprehensive," it was within the insured's
28           reasonable expectation that new types of statutory

**9**

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

> liability would be covered, as long as they were
> within the ambit of the language used in the
> coverage provision. * * *  [F]ailure to cover new
> liabilities would create a discordant result, for it
> would mean that where courts enlarge liability
> during the effective period of a liability policy,
> an insured who contracted for complete coverage of a
> possible risk would be left without coverage because
> the scope of risk had been enlarged by decisional
> law.  The same is true when legislatures create
> entirely new forms of liability.  The sole relevant
> inquiry in determining whether such types of
> liability are covered is whether, in view of the
> reasonable expectations of the insured, policy
> language can be interpreted to embrace the liability
> that may accrue under new statutory schemes.

10

AIU, 51 Cal 3d at 823 n9 (internal citation and quotations

omitted).

11

12

        To be sure, the California Supreme Court was addressing a

13

situation somewhat different from the present case.  But this is

14

precisely the kind of datum by which the California Supreme Court's

15

receptivity to Scottsdale's argument can be predicted.  And in this

16

respect, the foregoing passage from AIU signals that the California

17

Supreme Court will not fix an insurer's obligations at the time of

18

contract formation such that subsequent legislative enactments

19

cannot enlarge the scope of obligations that would otherwise be

20

encompassed by the language of the policy.

21

        In light of AIU and the clear language of the 1994 UPA,

22

the court concludes (1) the 1994 UPA determines whether Ou owned

23

the Post International property, (2) under the 1994 UPA, Ou did not

24

own the Post International property and, accordingly, (3) the owned

25

property exclusion does not preclude coverage as to Ou.

26

//

27

//

28

//

10

**B**

Even assuming *arguendo* that the pre-1994 UPA applies (and the court will entertain this assumption only because the effect of the pre-1994 UPA bears upon the issue of Scottsdale's good faith, see *infra* V), Ou was not an owner of the Post International property.  Although § 15025(1) of the pre-1994 UPA states that a "partner is coowner with other partners of specific partnership property holding as a tenant in partnership," California courts have <u>uniformly</u> stated that § 15025(1) does not mean what it says.  See, e g, <u>Mayer v C W Driver</u>, 98 Cal App 4th 48, 60 & n5 (2002); <u>Munkdale v Giannini</u>, 35 Cal App 4th 1104, 1111 (1995).  Further, California courts have applied this principle to insurance disputes where coverage turned on whether a partner owned partnership property.

One good example is <u>Bartlome v State Farm Fire & Cas</u>, 208 Cal App 3d 1235 (1989), which involved a partner's personal liability insurance coverage.  The coverage dispute turned on whether the partner owned a boat that was registered to the partnership.  The court noted how California's hybrid approach to the entity and aggregate theories of partnership was reflected in § 15025.  Specifically, although § 15025 begins by stating a "partner is coowner with the other partners of specific partnership property," § 15025 goes on to qualify that ownership such that "most of the normal incidents of ownership are held by the partnership as a group rather than the individual partners."  Id at 1240.  After an extensive discussion of case law from other jurisdictions, the court concluded by "reject[ing] the proposition that an individual partner is, in effect by operation of law,

11

United States District Court

For the Northern District of California

deemed the owner of specific partnership assets, simply by virtue of his status as a partner."  Id at 1243.

In Tinseltown Video, Inc v Transportation Ins Co, 61 Cal App 4th 184 (1998), an insured sued its insurer for failing to defend against an underlying action brought by two partners of a partnership that did business with the insured.  In order to determine whether the insurer owed a duty to defend, the court had to determine first whether the two partners held a real property interest in properties owned by the insured.  Relevant for present purposes, the court stated that in "California it is well-established that the partnership interest held by a copartner is treated in equity as personalty notwithstanding that the partnership property may consist of realty."  Tinseltown, 61 Cal App 4th at 196 (citing Comstock v Fiorella, 260 Cal App 2d 262, 266 (1968)).  Accordingly, the court held that a partner's interest in a partnership property of whatever character is held in a personal property interest for all purposes.  Id.

The court went on to discuss § 15025, explaining that although the language of § 15025 states that a "partner is coowner with other partners," it is generally recognized that real property acquired on behalf of the partnership is "owned by the partnership, not the partners individually."  Id at 198.  The court quoted other courts' explanation of the ambiguity of § 15025:

> "In all material respects, California Corporations Code section 15025 is identical to section 25 of the Uniform Partnership Act, a provision which has been described as follows:  'Although stating that each partner is a co-owner of the partnership property, [§ 25 of the Uniform Partnership Act] systematically destroys the usual attributes of ownership. * * * Functionally, despite the literal language, the partnership owns its property and the partners do

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

not.  The Act would be better if it conceded this
rather than accomplishing it by indirection.'"

Id at 199-200 (quoting Munkdale, 35 Cal App 4th at 1111 n6 (1995)

(quoting Employers Casualty Co v Employers Commerical Union, 632

F2d 1215, 1219-20 (5th Cir 1980))).

The court concluded that a "copartner's statutory right

to possession of partnership realty does not derive from the

copartner's ownership of the realty, which is owned not by the

copartner, but by the partnership."  Id at 200.  Thus, the court

held as a matter of law that the real property at issue was owned

by the partnership as an entity and not by the partners

individually.

More recently, a California intermediate appellate court,

in an unpublished opinion, utilized the reasoning of Tinseltown to

decide whether an insurance policy containing an owned property

exclusion barred coverage in a factual situation virtually

identical to the present case.  See Century Indemnity Co v Cannery

Row Plaza Assc, No H021857, 2002 WL 317915 (Cal App Ct Feb 28,

2002) (unpublished opinion).  In Century, a general partner of a

limited partnership sought defense and indemnity from an insurer in

an underlying action for defective design and construction of a

hotel.  As in this case, the insurer denied coverage to the general

partner on the basis of owned property exclusion.  The court found

that the general partner "had a statutory right to possession of

the hotel, the partnership realty, but the partnership realty is

owned by the partnership" and the general partner was "entitled to

coverage under the policies."  Id at *8.  The persuasive authority

of Century is, of course, amplified by published California state

13

United States District Court

For the Northern District of California

court opinions (i e, <u>Bartlome</u> and <u>Tinseltown</u>) holding that a partner does not own partnership property for purposes of insurance coverage.

Finally, courts applying other jurisdictions' versions of the pre-1994 UPA have held that a partner does not own partnership property for insurance coverage purposes simply by virtue of his status as a partner. See <u>Harleysville Mutual Ins Co v Packer</u>, 60 F3d 1116, 1120-21 (4th Cir 1995) (North Carolina law); <u>Green v Farmers Ins Co Inc</u>, 57 F Supp 2d 729, 734 (WD Ark 1999) (Arkansas law); <u>Auto-Owners Ins Co v Safety Mut Cas Ins Corp</u>, 476 So 2d 732, 734 (Fla Dist Ct App 1985) (Florida law).

C

In sum, although the court finds that the 1994 UPA applies in this case, the court has no trouble concluding that the California Supreme Court would hold that under either the pre-1994 UPA or 1994 UPA, a partner does not, simply by virtue of his status as a partner, own partnership property for purposes of an owned property exclusion such as that contained in the CGL policy. To be clear, the court does not hold that Ou is absolutely entitled to coverage. The court simply holds that the owned property exclusion does not apply to Ou and is therefore not a valid justification for Scottsdale's denial of coverage. To the extent Scottsdale denied coverage to Ou under the owned property exclusion, Scottsdale breached the contract; Ou's motion for partial summary judgment on its counterclaim for breach of contract is accordingly GRANTED.

//

//

14

United States District Court

For the Northern District of California

IV

In an effort to secure coverage as to SOCO, defendants contend that the CGL policy contains two provisions that "carve out" of the owned property exclusion the claims asserted in the Post International litigation.  Doc #32 at 11.  First, defendants point to the "Broad Form General Liability Endorsement" (the "broad form endorsement") accompanying the CGL policy, which appears subsequent to the exclusions.  Section 1 of the endorsement is entitled "Contractual Liability Coverage."  Section 1(A) provides that "[t]he definition of incidental contract is extended to include any oral or written contract or agreement relating to the conduct of the named insured's business."  Joint Stip, Ex D.  Next, defendants point to the "Exclusions" section of the policy itself. Exclusion (a) (alternatively, the "contractual liability exclusion") provides that coverage does not extend

> to liability assumed by the insured under any contract or agreement except to an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.

Id.

Because the claims asserted against defendants in the Post International litigation allege breach of contractual obligations that were entered into in connection with the defendants' business of real estate development, defendants contend those claims are in fact encompassed by the policy's coverage for liabilities assumed by the insured in incidental contracts. Although defendants do not clearly explain why the alleged coverage for incidental contracts exists in this case despite the owned

15

property exclusion, it appears that defendants read the contractual liability exclusion as excepting incidental contracts from all other exclusions set forth in the policy.  See Doc #32 at 12 ("Section (a) of the exclusions provides that the articulated exclusions in the policy do not apply to [i]ncidental [c]ontracts.").  Defendants' reading of the contractual liability exclusion is unreasonably broad.  The language excepting incidental contracts from the contractual liability exclusion does just that and nothing more.  It does not purport to except liabilities assumed by the insured in incidental contracts from other exclusions in the policy.

Next, defendants argue that because certain implied warranties (e g, warranty of fitness and warranty of workmanlike performance) are expressly excepted from the contractual liability exclusion, "the owned property exclusion does not apply in the face of claims arising out of implied warranty claims."  Id at 14.  A virtually identical argument was rejected in St Paul Fire & Marine Ins Co v Coss, 80 Cal App 3d 888 (1978).  The GCL policy in Coss contained a contractual liability exclusion identical to the policy in this case.  Similar to the Post International litigation, the claims against the insured "were for a breach of construction work to be performed and delivered."  Id at 894.  The insured argued that the contractual liability exclusion, which preceded other exclusions that would have themselves precluded coverage, could be interpreted to create coverage under the circumstances.  Id at 894-95.  Unpersuaded, the Coss court concluded that "[t]he exception to exclusion (a) merely removes breach of implied warranty of fitness, quality, or workmanship from the specific exclusion relating to

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

contractual liability." Id at 896. "The exception remains subject to and limited by all other related exclusions contained in the policy." Id.

Similar to the insured in <u>Coss</u>, defendants advance the alternative argument that even if the implied warranty exception from the contractual liability exclusion does not create coverage of itself, "at a minimum, the owned property exclusion and the incidental contract/warranty exceptions to the contractual liability coverage provisions render the policy ambiguous." Doc #32 at 15. According to defendants, this ambiguity should be resolved in favor of the insureds, resulting in a finding of coverage for both SOCO and Ou. To the extent the ambiguity arises from some conflict between the contractual liability exclusion and the owned property exclusion, a similar argument was also dismissed, summarily, in <u>Coss</u>. The court found that because the implied warranty exception to the contractual liability exclusion did not affect any other exclusion, no ambiguity existed. See <u>Coss</u>, 80 Cal App 3d at 896 ("For the reasons stated, exclusion (a) is not in conflict with the other exclusions; therefore, we do not find the ambiguity urged by Coss."). That same reasoning should apply in this case.

According to defendants, <u>Coss</u> is distinguishable because "the insured never argued that there was contractual liability coverage * * *. Nor did the policy at issue in <u>Coss</u> contain the Broad Form General Liability Endorsement." Doc #40 at 6-7. The thrust of defendants' argument, then, is that although the contractual liability exclusion itself may not create an ambiguity, it does so in conjunction with the endorsement's provisions

17

United States District Court

For the Northern District of California

relating to contractual liability coverage.  At the hearing, counsel for defendants suggested that a reasonable person would read the body of the policy itself and the exclusions, proceed to the broad form endorsement, encounter the provision entitled "Contractual Liability Coverage" and conclude that the endorsement created new coverage not provided for in the body of the policy. This argument fails for two reasons.

First, if this argument gains its force from the sequence in which the provisions appear in the body of the policy and endorsements or amendments thereto, then it is severely weakened by the fact that the owned property exclusion is reiterated (in modified form) on the very next page of the broad form endorsement. Thus, even if a reasonable person, upon encountering the contractual liability provision in the broad form endorsement, would believe that provision nullified certain exclusions such as the owned property exclusion, that belief would be dispelled by the reappearance of the owned property exclusion on the very next page.

Second, the court is bound to follow the rules of policy interpretation as set forth by the California Supreme Court.  And that court has made clear that the terms of an insurance policy, like any contract, should be interpreted in their "ordinary and popular sense."  See, e g, AIU, 51 Cal 3d at 821-22.  "Thus, if the meaning a layperson would ascribe to contract language is not ambiguous," the court will "apply that meaning."  Id at 822.  The court agrees with Scottsdale that the owned property exclusion (which appears initially in the body of the policy and again in modified form in the broad form endorsement) is clear:  coverage for property damage does not extend to property owned by the

United States District Court

For the Northern District of California

insured.  Accordingly, the court declines to accept defendants'
invitation to find an ambiguity where none exists.  See, e g, <u>Coss</u>,
80 Cal App 3d at 896 ("The courts will not indulge in a forced
construction of an insurance policy so as to fasten a liability on
the insurance company which it has not assumed.").

The court finds that the relevant provisions of the CGL
policy are unambiguous.  To be clear, the court does not hold that
the owned property exclusion defeats coverage as to SOCO.  Rather,
assuming (as the parties appear to have stipulated) that the owned
property exclusion would otherwise defeat coverage as to SOCO, the
court holds there is no ambiguity that justifies a finding of
coverage as to SOCO.  With that caveat, Scottsdale's motion for
summary judgment is GRANTED as to SOCO; SOCO's motion for partial
summary judgment on its counterclaim for breach of contract is
DENIED.

V

A

Every contract imposes on each party an implied duty of
good faith and fair dealing.  See <u>Egan v Mutual of Omaha Ins Co</u>, 24
Cal 3d 809, 818 (1979).  "Simply stated, the burden imposed is
'that neither party will do anything which will injure the right of
the other to receive the benefits of the agreement.'"  <u>Chateau
Chamberay Homeowners Ass'n v Associated Int'l Ins Co</u>, 90 Cal App
4th 335, 345 (2001) (quoting <u>Comunale v Traders & Gen Ins Co</u>, 50
Cal 2d 654, 658 (1958)).

In order to find a breach of the implied covenant of good
faith, an insured must show that (1) benefits due under the policy

19

United States District Court

For the Northern District of California

have been withheld and (2) the reason for withholding was unreasonable or without proper cause.  See Love v Fire Ins Exchange, 221 Cal App 3d 1136, 1151 (1990).  The inquiry must focus on whether the conduct of the defendant

> demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

Chateau Chamberay, 90 Cal App 4th at 346.

But "where there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute."  Id at 347.  Moreover, although an insurer might be liable for breach of contract, "[i]t is now settled law in California that an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith."  Id. (citing Fraley v Allstate Ins Co, 81 Cal App 4th 1282, 1292 (2000)).

"While the reasonableness of an insurer's claims handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence."  Chateau Chamberay, 90 Cal App 4th at 346.  More important for purposes of these proceedings, "[w]hen the issue of the insurer's objective reasonableness depends on an analysis of legal precedent,

United States District Court

For the Northern District of California

reasonableness is a legal issue," <u>CalFarm Ins Co v Krusiewicz</u>, 131 Cal App 4th 273, 287 (2005), presumably appropriate for summary judgment.

**B**

The court first determines whether benefits under the policy have been withheld.  SOCO and Ou first tendered defense of the Post International litigation to Scottsdale in June 2001. Joint Stip ¶15.  It was not until May 16, 2005 that Scottsdale agreed to represent Ou in the Post International litigation.  Id, Ex U.  Ou was without benefit of defense under the CGL policy for almost four years.  Accordingly, the court finds that the first prong is met.

Scottsdale argues that despite a withholding of benefits, its actions were reasonable and involved a genuine dispute over the interpretation of unsettled California law.  Specifically, Scottsdale argues that there is no published California case interpreting the scope and application of the owned property exclusion in insurance contracts.  Defendants suggest that the question of bad faith should focus on the dispute over a partner's status as owner of partnership property and not the dispute over the applicability of the owned property exclusion generally.  After reviewing the parties' written correspondence leading up to Scottsdale's agreement to defend Ou, the court agrees that the issue should be framed in this manner.  Viewed in this light, the court finds that Scottsdale's denial of coverage to Ou was unreasonable.

//

21

United States District Court

For the Northern District of California

First and foremost, Scottsdale offers no reasonable explanation for its belief that the pre-1994 UPA applied to this matter.  In ostrich-like fashion, Scottsdale has ignored the plain language of Cal Corp Code §§ 16111 and 16112, which state, clearly and unambiguously, that the 1994 UPA applies to all partnerships after 1999, excepting actions commenced or rights accrued before January 1, 1997.  And as already discussed, the 1994 UPA also states, pellucidly, that partners are not owners of partnership property.  Scottsdale has not cited any _relevant_ authority to justify its position that the 1994 UPA does not apply.  Nor has the court found any California or other potentially persuasive authority supporting Scottsdale's position.  Further, the authority that Scottsdale does cite undercuts its position.  See _supra_ III(A).  In short, there is no genuine dispute regarding the applicability or effect of the 1994 UPA.

Assuming _arguendo_ that the applicability of the pre-1994 UPA was a matter upon which reasonable minds could disagree, Scottsdale's position was nonetheless unreasonable.  The court has already discussed published California decisions holding that a partner is not an owner of partnership property for insurance coverage or other purposes under the pre-1994 UPA.  Scottsdale has not cited one case holding to the contrary.  Instead, Scottsdale (1) dissected helpful language from § 15025(1) without considering the effect of § 15025(2), (2) ignored a substantial body of published California case law interpreting § 15025 and (3) hid behind the fact that a well-reasoned opinion addressing an identical situation was unpublished.  The court finds _no_ legal basis for Scottsdale's assertion that Ou owned the Post

United States District Court

For the Northern District of California

International property simply by virtue of its status as a general partner.  Accordingly, Scottsdale's motion for summary judgment against Ou on its counterclaim for breach of the covenant of good faith and fair dealing is DENIED.

Further, with the well-developed record before the court, the absence of any issues of fact and the parties' complete briefing on this issue, the court, *sua sponte*, finds it appropriate to GRANT summary judgment in favor of Ou on its counterclaim for breach of the covenant of good faith and fair dealing.  See, e g, Gospel Missions of America v City of Los Angeles, 328 F3d 548, 553 (9th Cir 2003) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'" (quoting Cool Fuel, Inc v Connett, 685 F2d 309, 312 (9th Cir 1982)).

VI

As the court found no need to rely upon the declaration of Joy Ou, Scottsdale's motion to strike is DENIED AS MOOT.

VII

In sum, Scottsdale's motion for summary judgment in its favor as to Ou is DENIED; Ou's motion for partial summary judgment in its favor on its counterclaim for breach of contract is GRANTED. Partial summary judgment is further GRANTED in favor of Ou on its counterclaim for breach of the implied covenant of good faith and

//

23

fair dealing.  Scottsdale's motion for summary judgment in its favor as to SOCO is GRANTED, and SOCO's motion for partial summary judgment on its counterclaim for breach of contract is DENIED.

The parties are ORDERED to appear for a case management conference on January 31, 2006, at 9:00 am.


SO ORDERED.


VAUGHN R WALKER

United States District Chief Judge